## Case No. 12,679.

SEVENTY–EIGHT BALES OF COTTON.

[1 Lowell, 11:[1] 27 Law Rep. 251.]

District Court, D. Massachusetts. July, 1865.

PRIZE—PROPERTY ABANDONED BY ENEMY.

1. Cotton picked up at sea by a cruiser of the United States, under circumstances which show that it has recently been abandoned, either by an enemy or by a neutral engaged in breaking the blockade of an enemy's port, is rightly proceeded against as prize rather than derelict.

2. In order that goods should be condemned as prize, it is not necessary that they should be

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

taken by force, nor from actual hostile possession; it is enough that they have been rightly taken and are the property of an enemy.

The following facts appeared: On the forenoon of the thirty-first day of May, 1864, the United States public armed steamer Vicksburg, attached to the North Atlantic blockading squadron, and then cruising on what was known as the outside blockade, discovered a steamer lying to, some fifty miles from the coast of North Carolina. The stranger, on discovering the Vicksburg, immediately got up steam and endeavored to escape; was chased by the cruiser, but gained on her, and after some hours escaped. It afterwards turned out that this steamer was the Georgiana McGaw, bound from the Bermudas to some blockaded port; and the deposition of her master was taken in the case. When she was first seen, two merchant vessels, a barque and a brig, were lying to, not very far from her. Soon after the chase began, the officers and crew of the Vicksburg saw cotton floating in and near the wake of the McGaw, which some of them supposed to have been thrown from her to aid her escape, as was usual with cotton-loaded blockade runners. After giving up the chase, the Vicksburg returned upon her course, and on the same afternoon and the next morning picked up the cotton which was the subject of this proceeding. The two vessels above mentioned were found near where they had been seen before, and were evidently engaged in picking up cotton. The seventy-eight bales were sent to the port of Boston, by Captain Braine, commander of the Vicksburg, and at his request were libelled here by the district attorney, as prize. After the cause had been pending for some little time, Captain Braine, in behalf of the officers and crew of his ship, intervened by petition in the nature of a libel for salvage, and alleged that the goods were, in fact and law, not prize but derelict, and that the whole proceeds ought to be awarded to him and his officers and crew. No claimant appeared.

It was proved that this cotton was not thrown over from the Georgiana McGaw, and that it must have been thrown over within a day or two before it was found, and in all probability from some vessel which had recently broken the blockade, and was forced to make the jettison by stress of hostile pursuit of our cruisers.

W. G. Russell, for the officers and crew of the Vicksburg.

This is derelict property, which, under the circumstances, belongs to the finders, because there are no elements of capture to make it prize, and there are no owners who would be permitted to appear in this court, since they are undoubtedly enemies. The goods were not abandoned with any hope or intention of recovering them, and must be regarded as bona vacantia. To the point of

capture, see The Two Friends, 1 C. Rob. Adm. 283. We have no droits of the admiralty in this country, and if the goods are simply derelict, the whole will go to the finders, after the lapse of a sufficient time for the owners to appear and claim. Such has been the practice, of late, in this district and in several others. See Marv. Wreck & Salv. § 131n.

R. H. Dana, Jr., Dist. Atty., for the United States.

This is clearly a case of prize. Enemy property taken in any lawful manner, within the ebb and flow of the tide, is prize. The Aquila, 1 C. Rob. Adm. 41. In The Emulous [Case No. 4,479], 8 Cranch [12 U. S.] 110, the supreme court does not overrule Mr. Justice Story on this point. The question there was of the lawfulness of the taking. If this cotton should be considered derelict, the United States, and not the finders, would be entitled to the remainder, after due salvage is awarded, in case no claimant appears. Dane, Abr. tit. 76, art. 7, § 16; 3 Kent, Comm. 356; Peabody v. Proceeds of 28 Bags of Cotton [Case No. 10,869].

LOWELL, District Judge (after stating the facts). Upon this state of facts the questions, which have been argued with very great learning and ability, are, whether these goods are prize of war, and if not, what are the rights of the salvors or finders? I shall find occasion to deal with only the first.

For the Vicksburg, the position is taken that these goods were simply derelict; and that they were open to the occupancy of any finder, whose rights are the same as in time of peace; that in peace the finder is, by our law, entitled to a reasonable salvage, which, where the property was utterly derelict on the high seas, would ordinarily be one-half; and that he has, besides, a title to the remainder, when the lapse of time or other circumstances show that no owner will appear; and that in this case no owner can ever appear, because the goods, having broken blockade, would not, by our courts, even after the war is over, be restored to a person whose title would be so tainted with illegality. That the goods were derelict, is evident. But I think they were also prize of war. The question of prize or no prize is essentially a question of title. Enemy property, or property found so engaged in an unfinished voyage of illicit traffic with the enemy as to be quasi hostile, is liable to condemnation; property not in that predicament is not. And these goods are, confessedly, in that predicament, though under which branch of it cannot be known.

But, it is said, in order that goods should be condemned, they must be captured from the enemy, and here was no capture. Sir William Scott is quoted as saying in The Two Friends, 1 C. Rob. Adm. 283: "I know of no other definition of prize goods than that they are goods taken on the high seas, jure belli, out of the hands of the enemy." It is sought to be inferred from this remark of an eminent judge, that there must have been a hostile possession at the time of the taking, which possession has been changed by the captors. But it is evident that no such meaning was intended, because in the great majority of all the condemnations pronounced by that learned judge, the property came from neutral or friendly possession. Nor can it be maintained that the application of force, actual or constructive, is necessary. In many cases that have passed into judgment the goods were driven within the jurisdiction by stress of weather, or of a hostile pursuit which had ceased, or had been detained by an embargo; and the taking has often been only by the marshal, on his warrant, after due proceedings had in the prize court itself.

It is true there often is a capture; and when that is the case, the title and right are derived through that capture, and it must be such as the laws of war authorize. And the prize court may well refuse to try the question of prize, when it appears that the captors invoke its aid in favor of a title improperly acquired. The Conqueror, 2 C. Rob. Adm. 303. As, if the capture be within neutral territory, and the neutral government require restitution to be made. So in a remarkable case before Sir William Scott. The Jonge Jacobus, 1 C. Rob. Adm. 243, where the officers and crew of a British frigate who had been saved from shipwreck and brought into Yarmouth by a neutral vessel with enemy cargo on board, proceeded against the vessel and cargo as prize, the court very properly refused to examine the question, so far as the vessel was concerned, and intimated that the same rule would have been applied to an enemy vessel, as it clearly ought. But in that very case the learned judge observed that the cargo might properly be condemned; and I suppose it was condemned. This case shows very clearly that no capture is necessary, and that all the court requires is jurisdiction properly obtained, and then its inquiry is into the title. Thus the cargo was thought (though wrongly, as it seems to me on the merits of the question) not to be entitled to the safe conduct which was implied in favor of the ship, and so, though never captured, it was condemned.

In the case of The Emulous [Case No. 4,479], goods owned in England and found here in the custody of one of our citizens on the breaking out of the war with Great Britain, in the year 1812, were libelled as prize, and Judge Story, following Lord Stowell and the practice of the British towards us in that war, condemned them as prize, but the supreme court reversed this decision, not on the ground of want of capture or want of taking from hostile possession, but because

they were not willing to admit that the laws of war as understood and practised in this country authorized such reprisals. The Emulous [supra]; same case, 8 Cranch [12 U. S.] 110, sub nom. Brown v. U. S. In the case from which the quotation has been made, the question was only whether goods captured at sea could, after being landed, be proceeded against as prize; and Lord Stowell was only deciding that the taking was so far maritime as to make it a question properly of prize and not of common-law jurisdiction. He was not attempting to give an exhaustive definition of prize; though, as I understand his language, it is perhaps as good a definition as could easily be made. Including neutral goods liable to condemnation from being involved in illegal trade under the phrase enemy goods, which you must do in any interpretation, I understand him to mean simply this: "Prize is enemy property taken at sea, jure belli." That is, taken into our hands, and therefore out of the enemy's hands.

But, it may be said, in all the instances above given, the taking, whether forcible or not, and whether from hostile possession or not, was, at all events, jure belli; and here the taking was by right of finding, which would equally exist in time of peace, or in favor of a non-commissioned vessel; as of the barque or brig which did take some cotton without interference by the Vicksburg.

In point of law the possession was taken and held jure belli, and was a capture. If the hostile or quasi hostile owner had, immediately after the taking, demanded the goods, tendering a sufficient salvage, the answer would have been, and rightly, that they were held as goods liable to be condemned to the United States, as having been taken on the high seas, jure belli. And the merchant vessels, if American (as one of them was), might lawfully have set up the same right; but if neutral, they must have yielded to the demand of the true owner. There is no difficulty in holding the goods to have been both derelict and prize; derelict so as to give a primary right of possession to the finder, and prize to give the sovereign of that finder, if a hostile belligerent as regards the owner, the right to condemn the property as prize. And to this effect is the language of Sir William Scott in The Aquila, 1 C. Rob. Adm. 41, a case of a ship and cargo found at sea: "This case, therefore, is to be considered as derelict; and in that form the proceedings were originally commenced against both the ship and cargo; the ship has been claimed and restored; the cargo has not been claimed; but there was reason to expect an owner would appear, as there were papers on board describing it to be the property of a neutral owner. Some suspicions occurred, however, that it was in fact the property of an enemy; and under these circumstances it became expedient to proceed against it as a prize, for the purpose of meeting the pretensions of the ostensible, neutral owner, and of

bringing the examination of his claim, where alone it could be properly discussed, into the prize court." If this is not so, the absurdity follows which was urged at the bar, that the crew of a vessel chased by a hostile cruiser have only to abandon her, and if she is taken by another cruiser that did not join in the chase, then, though fully armed for war, she is only derelict and not prize.

It is argued that if property belonging to one of our citizens had been captured by an enemy and had then been abandoned by him and found by one of our cruisers under circumstances and in the way that these goods were abandoned and found, such finding would not be a recapture, and the finders would not be limited to the statute rate of salvage as for a recapture. This is true. But recapture is a matter of statute, and its meaning is not necessarily the converse of that of capture. By definition it denotes a taking from hostile possession. Capture affects the title of the true owner: recapture only the possessory right of the captor. By capture the goods come into the possession of an enemy; but do not become his property until condemnation. If abandoned before condemnation, the title of the original owner attaches again, and the finder, if a friend, finds for him, and divests no right of the enemy, for that was wholly possessory and was lost by the abandonment. This is well shown by the case, among many others, of The Adventure, 8 Cranch [12 U. S.] 221, in which a French captor gave a British prize to an American shipmaster; and the supreme court held that the original British owner should have the remaining property after salvage paid; and, war in the mean time having occurred with England, allowed him till peace to make his claim, on the principle of the case of The Emulous, above referred to.

But suppose the Vicksburg, with this cotton on board, had been taken by the enemy, and carried into one of their ports and before one of their tribunals, would not the captors of the Vicksburg have been entitled to salvage from the original owners of the cotton, as upon a recapture, or must they have restored without salvage?

Finally, it is urged that our prize acts regulating the awards of prize-money, and prize proceedings generally, speak only of the capture of vessels and their cargoes, and of the relative force of the vessels, giving the captors the whole of the prize, if the latter is of equal or superior force to the captors, and the half if she is of inferior force: but that here is no vessel, and no force, superior or inferior; wherefore, it is concluded, there can be no prize.

But the prize acts do not undertake to define what shall be lawful prize, nor, in general, how the court shall obtain jurisdiction to pass upon that question. They regulate some of the proceedings of the captors, and of the courts, and the mode of ascertaining and distributing the prize-money. If the property is water borne, it need not be in a vessel, and

if it be properly brought within the jurisdiction of the court, it need not be by what would be in the most strict and literal sense a capture. If the takers should not come within the benefits of the prize acts as captors in any particular case, it would be their misfortune, in so much that they must seek their redress in another tribunal. But that they would eventually be compensated, we cannot permit ourselves to doubt. It has been the habit of congress in all our wars, I believe, to award suitable remuneration to non-commissioned captors, and all others who have performed services of this nature, for which the law has made no effectual provision. And, indeed, courts of prize have power to grant a reasonable compensation under the name of salvage, which in theory, perhaps, is rather for the preservation and bringing in of the goods than for the original taking; and in the case of mere derelict there would be no difficulty in considering that the salvage should be as large a proportion of the value as our acts now allow for prize-money in the case of an ordinary unarmed prize, that is one-half. The Dos Hermanos, 10 Wheat. [23 U. S.] 306. I find no such difficulty, however, in this case, because this court has always construed the acts to include all lawful takings by commissioned cruisers, whether any vessel or opposing force were present or not. If the force is not equal or superior, it is taken to have been inferior. And I do not doubt that this is the correct interpretation.

I conclude, therefore, that these goods must be condemned as prize, and distributed accordingly, the Vicksburg being entitled, as sole captor, to one-half of the proceeds. Decree accordingly.

---

SEVENTY–EIGHT BARRELS (UNITED STATES v.). See Case No. 16,257.

SEVENTY–EIGHT CASES OF BOOKS (UNITED STATES v.). See Case No. 16,258.

SEVENTY–EIGHT CASKS OF WHITE WINE (UNITED STATES v.). See Case No. 16,259.

SEVENTY HOGSHEADS AND NINE BARRELS OF SUGAR (SHEAFF v.). See Case No. 12,730.